[Crim. No. 328.  Third Appellate District.—October 20, 1915.]

# In the Matter of the Application of ARTHUR E. HART-WELL, for a Writ of Habeas Corpus.

CRIMINAL LAW—BURGLARY—COMMITMENT—EVIDENCE—WANT OF PROB-ABLE CAUSE—HABEAS CORPUS.—An order of a committing magistrate holding a defendant to answer for the offense of burglary purported to have been committed by entering the mill of the "Croesus Gold Mining and Milling Company" in the county of Sierra on a certain date "with intent then and there to commit the crime of larceny," is without support, and the commitment of the defendant thereon is without reasonable or probable cause, and the defendant entitled to his discharge on *habeas corpus*, where the order is based solely upon the testimony of a witness as to an admission made to him by the defendant that the latter and his partner "had held up the Plumbago mill," without any evidence that such mill belonged to the Croesus Company or that the mill was located in Sierra County, or without any other evidence that a crime was committed, except as implied from the use of the phrase "held up."

ID.—SUPPORT OF COMMITMENT—COMPLAINT.—The complaint cannot be used as matter of evidence at the preliminary examination, or as an affidavit to support the commitment, where it contains nothing more than the mere charge.

APPLICATION for a Writ of Habeas Corpus originally made to the District Court of Appeal for the Third Appellate District.

The facts are stated in the opinion of the court.

Hennessey & Peterson, and James Snell, for Petitioner.

U. S. Webb, Attorney General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—It appears from the return of the sheriff that the said Arthur E. Hartwell was committed to his custody, on September 8, 1915, and is now detained, "based upon an order of a committing magistrate holding him to answer for the offense of burglary purported to have been committed by said Hartwell by entering the mill of the Croesus Gold Mining and Milling Company in the county of

Sierra, state of California, on the 17th day of July, 1915, with intent then and there to commit the crime of larceny," a copy of which commitment is made part of the return.

It appeared that the commitment was issued after the preliminary hearing on a complaint charging the crime, as stated in the sheriff's return. The petition states that "there is not reasonable nor probable cause for such commitment for the reason that the evidence adduced at said preliminary examination wholly fails to show that said burglary was committed, or that any offense known to the laws of the state of California was committed at all, in this, that no evidence was adduced at said preliminary examination, showing, or tending to show that the said defendant, or that any other person, entered the said mill on (of) the said Gold Mining and Milling Company on the 17th day of July, 1915, or at any other time, or at all, with the intent to commit larceny, or any other crime, or any other felony, or at all, or that there is reasonable or probable cause to believe said defendant guilty of said offense or guilty of any offense known to the law of the state of California. All of which more fully appears in the transcript of the testimony taken at said preliminary examination, a copy of which is hereto annexed, marked Exhibit 'A,' and made a part hereof.'' It further appears that, on September 14, 1915, the district attorney filed in the office of the county clerk of said county an information charging said Hartwell with the said crime of burglary and that he was thereupon brought before the superior court and arraigned and caused to enter a plea to said information, whereupon he pleaded not guilty and the judge thereupon fixed a day for the trial of said cause and will, unless restrained by order of this court, proceed to try the said Hartwell upon said charge.

At the preliminary examination the only evidence introduced was the testimony of Joseph Simonetti who gave his residence as San Francisco and his occupation as detective. He testified that he arrived at Alleghany, in Sierra County, on July 15, 1915, and met Hartwell on the 16th; that he (the witness) remained at Alleghany about a week and then went to the Plumbago mine, about three miles from Alleghany, where he worked nineteen shifts, having commenced work on the twenty-third day of July; that he did not meet Hartwell while he was working at the Plumbago mine but

met him on his return to Alleghany about July 23d; that he was at Alleghany from August 13th to about September 1st and during that time met Hartwell frequently. "Q. Did you have any conversation with him relative to the holding up of the Plumbago mill on the 17th day of July, of this year? A. I did. Q. Please state the conversation. State everything in detail that happened when Mr. Hartwell was present. A. Well, we were sitting out in front of De Launey's hotel and I had a few pieces of high grade in my pocket and I showed it to him and we got talking and he wanted to know if there was much of it at the mine and I told him yes, that Pearson had quite a bit in his safe and he wanted to know if there would not be a good chance to get it from Pearson and I told him I thought there was, so we went on talking. Mr. Snell (attorney for defendant) : We ask that this all be stricken out as not responsive to the question. Mr. Redding (district attorney) : Yes, that is right, what we want is his statements relative to the offense of burglary committed at the Plumbago mill on the 17th day of July. A. We got in conversation about holding up and one thing or another and he said him and his partner knew how to hold up the mill and that they held up the Plumbago on the morning of the 17th. Q. Did he say who his partner was? A. He said he would introduce me to them later on, Thompson, Ed Hardy and himself—Jim Thompson." He testified that Hartwell did not introduce these parties but that they introduced themselves and that he had conversations with them when Hartwell was not present. "Q. What statements did Mr. Hardy and Mr. Thompson make regarding this hold-up?" Over Hartwell's objection, the witness answered: "Why, they told me that several times there, that they were the ones that held Pearson up on the highway and also held up the mill on the 17th of July—a fellow by the name of Hobart, Ed Hardy and Arthur Hartwell." He testified that he had several conversations with these parties, except Hartwell with whom he had no further conversation than above related, and in these conversations they explained "the details of the hold-up." The foregoing is the substance of all the evidence on which the petitioner was held to answer. At the close of Simonetti's testimony the district attorney said: "Now, if your honor please, the point was raised by the attorneys for the defendant that the actual offense has

not been proven; if there is any doubt in your honor's mind about being justified in holding this defendant for trial, I would suggest that the examination be continued until day after tomorrow so that a witness can be subpoenaed to prove the offense. I don't believe it is necessary because we have the admissions of the defendant to the commission of the offense, but if there is any doubt, I would ask a continuance of the case. The Court: These men are all charged together. I think there is evidence enough to hold the defendant over without any doubt at all.''

It will be observed that the charge against petitioner was that he entered the mill of the Croesus Gold Mining and Mill-ing Company in the county of Sierra with intent to commit larceny. The evidence was that he "held up" the Plumbago mill, but there is no evidence that this mill belonged to the Croesus Gold Mining and M---ing Company, nor is this mill shown by the evidence to be in Sierra County, the only evidence being that it is about three miles from Alleghany which latter place is in Sierra County. And there is no evidence that any offense or the offense charged was committed, to wit, the crime of burglary with intent to commit larceny, unless it can be inferred from the terms "held up," and these terms are used in connection with the Plumbago mill. We think it cannot be reasonably held that an admission to the "holding up" of a mill is an admission that the person entered the mill with intent to commit larceny. If it had appeared by evidence that the crime charged had been by some one committed on July 17th the admission of the defendant that he and "his pals held up" the mill on that day might be held to connect him with the crime sufficiently to show what would be regarded as probable cause, since it is well settled that much less evidence is required to support the commit-ment than would be necessary to support a verdict of guilty.

Respondent claims that the complaint, being sworn to, can be used as an affidavit in support of the commitment and it thus appears that the crime was committed. We do not understand that the complaint can be used as matter of evidence at the preliminary examination. In the Kansas case relied upon by respondent—*Redmond* v. *State*, 12 Kan. 172, the court said: "The original complaint has spent its force when the order of arrest is issued, and the order of arrest is the foundation for the preliminary examination." This

must be true, for if the evidence shows that a crime has been committed other than that charged in the complaint the accused may be held for such crime. (Pen. Code, sec. 872.) Respondent cites *Ex parte Dimmig*, 74 Cal. 164, [15 Pac. 619], where the court said: "It may also be true that the original information might be treated as a deposition; and in such view, if it contained positive evidence of facts tending to show guilt, it might be sufficient basis for the issuance of a warrant." Respondent fails to notice what precedes and follows this quotation: "The original information may be sufficient, though made only upon information and belief, if followed by the deposition of the complainant, or some other witness, stating facts tending to show the guilt of the party charged." Then follows the statement used by respondent, the court adding: "But a mere affidavit in the form of an information, containing no evidence, and followed by no deposition stating any fact tending to show guilt, is insufficient to support a warrant. The liberty of a citizen cannot be violated upon the mere expression of an opinion under oath that he is guilty of a crime." The prisoner was discharged.

It is not claimed that the complaint here contained any statement of facts or anything more than the charge as we have shown above. It cannot, therefore, be resorted to as tending to prove that a crime was committed. The magistrate may have had reason to believe from outside sources that the crime charged had been committed, but we must act upon what was proven before him, and the record purports to contain all the evidence. Without some evidence that the crime charged had been committed the admissions, in our opinion, were not alone sufficient to support the commitment. The prisoner is discharged.

Burnett, J., and Hart, J., concurred.